SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
212-735-3483
DIRECT FAX
917-777-3483
EMAIL ADDRESS
CHRISTOPHER.GUNTHER@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

May 22, 2023

Hon. Naomi R. Buchwald
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

RE:    *United States v. Carmine Sarnelli* 22 Cr. 116 (NRB)

Dear Judge Buchwald:

We respectfully submit this Memorandum and the attached exhibits on behalf of our client, Carmine Sarnelli, in connection with his upcoming sentencing on June 6, 2023.

I.    **Introduction**

On February 16, 2023, Mr. Sarnelli pled guilty before Your Honor to conspiring, from in or about 2019, up to and including in or about May 2021, to distribute and possess with intent to distribute 500 grams and more of methamphetamine, in violation of title 21, sections 841(b)(1)(A) and 846 of the United States Code. Pursuant to Mr. Sarnelli's plea agreement with the Government, the parties agree that the advisory United States Sentencing Guidelines range is 135–168 months' imprisonment, with a mandatory minimum term of 120 months' imprisonment, based on a Criminal History Category of I and an offense level of 33, and that either party may seek a sentence outside of the guidelines range, based on the factors set forth in title 18, section 3553(a). The Presentence Investigation Report ("PSR") concludes that the applicable Sentencing Guidelines range is 135–

Hon. Naomi Buchwald
May 22, 2023
Page 2

168 months and recommends a below-guidelines, mandatory minimum sentence of 120 months.

We respectfully submit that the mandatory minimum sentence of 120 months' imprisonment is "sufficient but not greater than necessary" to comply with the goals of sentencing.  18 U.S.C. § 3553(a).  Mr. Sarnelli takes full responsibility for his crime, recognizes its serious nature, and is determined to seek the help he needs.  His conduct occurred in the context of Mr. Sarnelli's tumultuous upbringing, which led him to a long-term methamphetamine addiction.  Since being incarcerated in May 2021, Mr. Sarnelli has been a model prisoner who has committed himself to growing and becoming a better person.  Now sober, he recognizes his priority must be to beat his drug addiction, so that he may return to his community as a healthy, law-abiding citizen.  He is committed to pursuing addiction treatment while serving his sentence and after his sentence if necessary.  Furthermore, he has taken 248 educational courses while incarcerated and intends to keep learning and using his time wisely while incarcerated.  (*See* Exhibit A.)

We respectfully submit that the nonviolent nature of this offense, Mr. Sarnelli's troubled upbringing, his addiction, his lack of criminal history, and the way he has conducted himself since being incarcerated weigh in favor of the mandatory minimum sentence of 120 months' imprisonment, preferably at a minimum security facility.

## II.     **Factual Background**

### A.     Upbringing and Family

Mr. Sarnelli was born in Queens, New York, in 1974, to Elizabeth Diane Frank and Antonio Sarnelli.  (PSR ¶ 49.)  Mr. Sarnelli had a tumultuous childhood, marred by drug abuse and tragic loss.  (PSR ¶¶ 49, 52.)  Mr. Sarnelli's parents divorced when he was one years old, in part because of his mother's addiction to cocaine and heroin.  (PSR ¶ 49.)  After the divorce and custody battle, Mr. Sarnelli's father won full custody and Mr. Sarnelli was separated from his half sister.  (PSR ¶¶ 49, 50.)  Many years later, in 2005, Mr. Sarnelli hired a private investigator to track down his half sister.  (PSR ¶ 50.)   They emailed for about a year but never visited each other, and she ultimately died of kidney failure related to an eating disorder, in 2006.  (PSR ¶ 50.)

After Mr. Sarnelli's mother moved to California, he visited her about once a year for three years.  (PSR ¶ 51.)  But even as a child, Mr. Sarnelli could tell his

Hon. Naomi Buchwald
May 22, 2023
Page 3

mother struggled with drug addiction and a lifestyle unfit for a child, and he stopped the visits.  (PSR ¶ 51.)

On the other hand, Mr. Sarnelli recalled fond memories of his father.  (PSR ¶ 52.)  Tragically, in 1985, when Mr. Sarnelli was 11 years old, his father was murdered on the street.  (PSR ¶ 52.)  He was shot five times in the head while working on a construction site in Manhattan.  (PSR ¶ 52.)  Mr. Sarnelli and his family believe his father's death was related to a dispute over money or drug debt and that he was ultimately set up by his friend connected to organized crime.  (PSR ¶ 52.)

Life as Mr. Sarnelli knew it crumbled around him.  With his father gone, Mr. Sarnelli's mother came to New York to pick up Mr. Sarnelli and take him to California.  (PSR ¶ 54.)  Mr. Sarnelli's paternal grandmother filed a missing person's report to find him.  (PSR ¶ 54.)  The issue eventually ended up in family court in New York, and a judge asked him, at age 12, if he wanted to live with his mother or his grandmother.  (PSR ¶ 54.)  Mr. Sarnelli recalled that it was an easy decision to pick his grandmother because of his mother's abuse and neglect.  (PSR ¶ 54.)[1]

At age 12, Mr. Sarnelli moved in with his paternal grandparents; uncle Nicola Sarnelli,[2] who was 11 years older than Mr. Sarnelli; and his aunt.  (PSR ¶ 55.)  Mr. Sarnelli's grandparents were first-generation Italian immigrants who cared deeply for him after his father's death.  (PSR ¶¶ 55, 57.) Because his grandparents could not speak English, his aunt would often assist him with schoolwork or paperwork.  (PSR ¶¶ 55, 56.)  She was like a mother figure to him.  (PSR ¶ 56.)  Unfortunately, his aunt died in 1993 in a car accident with a drunk driver.  Once again, Mr. Sarnelli had to cope with the loss of a parental figure.  (PSR ¶ 56.)

In 2005, Mr. Sarnelli married, and the couple had two children together.  (PSR ¶ 58.)  Unfortunately, the couple separated in 2013, partially due to Mr. Sarnelli's struggles with drug addiction.  (PSR ¶ 58.)

---

[1]  In 2019, in an act of desperation during his addiction, he reached out to her for help when he was homeless.  (PSR ¶ 51.)  In response, his mother offered him $20.  (PSR ¶ 51.)  Mr. Sarnelli felt hurt by this apathy, and they have yet to speak since.  (PSR ¶ 51.)

[2]  Probation conducted a collateral phone interview with Nicola Sarnelli, who corroborated all the information provided by Mr. Sarnelli during his presentence interview.  Mr. Nicola Sarnelli's letter at Exhibit D also corroborates much of the information about Mr. Sarnelli's upbringing.

Hon. Naomi Buchwald
May 22, 2023
Page 4

B.        Work and Education

Mr. Sarnelli graduated from Lawrence High School in Cedarhurst, New York, in 1993.  (PSR ¶ 86.)  He attended Nassau Community College in Garden City, New York, for a few months after completing high school.  (PSR ¶ 87.)  In 1998, Mr. Sarnelli passed his series 7 and series 63 exams to be a licensed securities broker.  (PSR ¶ 88.)  In 2002, Mr. Sarnelli passed his series 24 General Securities Principal Examination and, in 2018, added the completion of a Securities Industry Essential Exam.  (PSR ¶ 88.)

From 1998 to 2019, Mr. Sarnelli worked at 14 different brokerage agencies.  (PSR ¶ 91.)  The complete record of Mr. Sarnelli's work history is detailed in the PSR.  (PSR ¶¶ 91-107.)

C.        Mental Health and Substance Abuse

Mr. Sarnelli never obtained professional counseling or mental health assistance in response to the difficult circumstances described above.  Instead, he turned to drugs to self-medicate.  Mr. Sarnelli's drug use was also partially motivated by his "daily work grind."  (PSR ¶ 84.)  He would take drugs to focus at work and sleep at night.  (PSR ¶ 84.)  Mr. Sarnelli has a significant history of being prescribed medications for anxiety, depression, and ADHD, including Xanax and Adderall.  (PSR ¶¶ 68-70.)  He also has abused many illicit substances, including methamphetamine and opioids.  (PSR ¶ 75.)

D.        Criminal History

Mr. Sarnelli does not have any criminal history.  Mr. Sarnelli is not alleged to have committed violence.

E.        COVID-19 & Violence at Essex

Mr. Sarnelli was committed to Essex County Correctional Facility ("Essex") on May 17, 2021, during the middle of the COVID-19 pandemic.  Mr. Sarnelli was subject to multiple arduous lockdowns due to COVID-19 and witnessed violent fights.

While the COVID-19 pandemic has been more contained over the past year, Mr. Sarnelli served his first year incarcerated during a frightening and unprecedented time.  When he first arrived at Essex in May 2021, he was put on lockdown for 15 days.  For the first eight days he was unable to leave his cell for 24 hours, not even to shower or use the phone.  For the next seven days he was able to leave his cell for

Hon. Naomi Buchwald
May 22, 2023
Page 5

only 30 minutes a day to shower and use the phone.  Due to COVID-19 protocols, Mr. Sarnelli was unable to receive visitors for six months (from May 2021 to January 2022), and, because of an administrative issue, he was unable to use the phones during that same time from June 2021 to August 2021.  In fact, even Mr. Sarnelli's defense counsel had trouble meeting with him and on multiple occasions had to meet with him on the other side of a glass barrier.  Not only was he shut off from the outside world, but he was also terrified of his immediate surroundings.  He saw inmates around him contract COVID-19 and fall incredibly sick and was immensely scared of contracting COVID-19 himself.

Furthermore, while incarcerated in Essex, Mr. Sarnelli has witnessed violent and horrific fights that have left him in fear for his life.  Particularly, in October 2021, Mr. Sarnelli witnessed a friend be beaten so badly that he had to spend one month in the hospital and have two metal plates inserted into his face.  Mr. Sarnelli reported being put on lockdown on at least eight or nine occasions due to violent fights.  There are many news articles detailing the horrific violence that occurs inside the walls of Essex.[3]

F.    Offense Conduct

As set out in Mr. Sarnelli's letter to Your Honor, Mr. Sarnelli acknowledges and accepts full responsibility for his conduct in this case.  Mr. Sarnelli stated that since his arrest two years ago, he has done a lot of self-reflection and is ashamed, embarrassed, and horrified of the harm he caused his family and friends. Mr. Sarnelli is committed to his drug addiction recovery and is ready to accept his punishment for his past behavior.  Mr. Sarnelli has expressed a desire to engage in all drug rehabilitation programs available in federal prison, which he hopes can "give [him] the building blocks and tools that [he] can carry with [him] the rest of [his] life to use to continue to make [him] better."  (Exhibit B.)  Upon release, Mr. Sarnelli wants to reconnect with his two children, adding that "it kills me inside every day that I don't have contact with them."  (Exhibit B.)

---

[3]    "He Went to Jail on Minor Charges.  He Left in a Coma," *New York Times*, Tracey Tully, Dec. 2021; "Violence Continues at Essex County Prison: Inmate Death, Fires, Fights," *Patch.com*, Eric Kiefer, April 2022; "After Violence at N.J. Jail, Oversight Committee Probes Housing and Mental Health," *NJ.com*, Josh Solomon, Jan. 29, 2022.

Hon. Naomi Buchwald
May 22, 2023
Page 6

### III.    Sentencing Considerations

####    A.    The Sentencing Guidelines

The parties have stipulated, and the Probation Office agrees, that the applicable offense level is 33, at Criminal History Category I, and the Sentencing Guidelines range is 135 to 168 months.

####    B.    The Mandatory Minimum of 120 Months Is Appropriate

#####        1.    Section 3553(a) Factors

Section 3553(a) requires a court to impose a sentence that is "sufficient, but not greater than necessary."  As the Court is aware, it must "undertake an individualized assessment" to determine the appropriate sentence, "based on the facts presented."  *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38, 48, 50 (2007)).  In making this determination, the Court may consider the applicable Sentencing Guidelines range but must not presume that this sentencing range is reasonable or proper in every case.  The Court must "conduct its own independent review of the [§ 3553(a)] factors, aided by the arguments of the prosecution and defense."  *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc).  Specifically, section 3553(a) requires the Court to consider, among other factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C 3553(a).

Hon. Naomi Buchwald
May 22, 2023
Page 7

The mandatory minimum is appropriate in Mr. Sarnelli's case in light of a number of significant mitigating factors that the Court may properly consider under section 3553(a) factors but that are not accounted for in the Guidelines.

(a)     *The Nature and Circumstances of the Offense*

As discussed above, Mr. Sarnelli understands that the offense conduct was wrong and accepts full responsibility for it.  At the time the offense took place, Mr. Sarnelli was struggling with methamphetamine addiction, and his decision to possess and sell methamphetamine was driven by that addiction.

Mr. Sarnelli essentially grew up without parents.  For his entire life, Mr. Sarnelli's mother has been a neglectful addict who traumatized him with her erratic and troubling behavior.  Mr. Sarnelli's father was murdered when he was 11. Although Mr. Sarnelli's extended family brought him into a loving home after his father's death, he was without an immediate family and that had a profound effect. Mr. Sarnelli's tumultuous upbringing brought him to self-medicate with drugs, and he has been addicted to drugs for more than 22 years.  He has taken a mix of prescription drugs and methamphetamine on a daily basis since 2001.  When his drug addiction prohibited him from holding a job in 2019, he started selling drugs to fuel his engrained and established habit.

(b)     *Mr. Sarnelli's History and Personal Characteristics Support a Reduced Sentence*

Mr. Sarnelli's friends describe him as a genuine, good-natured person who is a loyal friend that helps others through hard times.  (*See* Exhibit C; Exhibit E.) Furthermore, Mr. Mustello stated that Mr. Sarnelli loves his two sons very much and would like to reconnect with them and "be the father he knows to be."  (Exhibit E.) Mr. Mustello also stated that Mr. Sarnelli told him he was very sorry to be involved in his lifestyle before his arrest and will not continue that lifestyle once he is released.  (Exhibit E.)

In his letter to the Judge, Mr. Sarnelli acknowledges that he is a drug addict who addressed every problem in his life with drugs.  (*See* Exhibit B.)  In his two years in prison, Mr. Sarnelli has reflected on his life and "did not like the man that was staring back at [him]."  (Exhibit B.)  He takes full responsibility for his actions and the harm he has caused his family and friends.  (*See* Exhibit B.)  He wants to better himself and take advantage of every program offered by the federal

Hon. Naomi Buchwald
May 22, 2023
Page 8

government to recover from his addiction and learn the tools and skills necessary to live a drug-free life after his release.  (*See* Exhibit B.)

Importantly, after his release, Mr. Sarnelli will have support from a recovery community to continue his sober life.  (*See* Exhibit C.)  Mr. Sarnelli's friend, who struggled with substance and alcohol abuse, has been sober for almost two years now and wants to "be a power of example for Tony" and "be there to help him out in any way [she] can."  (Exhibit C.)  She reports that her recovery community has been the key to her success and hopes it can help Mr. Sarnelli after his release as well. (Exhibit C.)

*(c)*    <u>*Other Factors*</u>

(i)    Conditions at Essex

Mr. Sarnelli's period of incarceration at Essex has been tremendously difficult.  He was sent to Essex on May 17, 2021, in the midst of the COVID-19 pandemic.  He watched inmates around him contract COVID-19 and become seriously ill.  He was in continual fear of contracting COVID-19 himself.  He was cut off from the outside world and, because of COVID-19 protocols, was unable to receive visitors for months.

The Second Circuit has held that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures." *United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001) (per curiam).  Courts in this District have recognized that such conditions are also an appropriate basis for the imposition of a non-Guidelines sentence.

As Judge Engelmayer observed in *United States v. Mcrae*, "a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison," and incarceration in the era of COVID-19 "is, unavoidably, experienced as more punishing."  No. 17-cr-643, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021).

Mr. Sarnelli also has witnessed horrific violence at Essex, as noted above.

Hon. Naomi Buchwald
May 22, 2023
Page 9

(ii)    Other Conduct

Section 3553(a)(1) urges the Court to evaluate the "history and characteristics of the defendant in determining an appropriate sentence," which should take into account the defendant's history of good conduct. *See United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006) ("But, surely, if ever a man is to receive credit for the good he has done . . . it should be at the moment of his sentencing, when his very future hangs in the balance.")  In other words, "[the] elementary principle of weighing the good with the bad . . . was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor 'the history and characteristics of the defendant.'"  *Id*. at 514 (quoting 18 U.S.C. 3553(a)(1)).

In the more than 24 months that Mr. Sarnelli has been held at Essex, Mr. Sarnelli has been a compliant inmate with no disciplinary infractions.  He has taken 248 educational courses while housed in Essex, including courses such as "The Change Within" and "Positive Parenting."  (*See* Exhibit A.)

C.    Mr. Sarnelli's Requests a Recommendation to a Minimum Security Facility

Mr. Sarnelli asks the Court to consider recommending that the Bureau of Prisons ("BOP") designate him to a minimum security facility.  We want to be clear that we are not asking the Court to assess whether Mr. Sarnelli is eligible for a minimum security facility; we understand that process will be completed by the BOP.  However, based on our assessment of the BOP's resources, we believe Mr. Sarnelli will be eligible for a minimum security facility, and we understand that the BOP takes into consideration the sentencing court's recommendation in determining an inmate's facility.

D.    Mr. Sarnelli Requests a Recommendation to Residential Drug Abuse Program

Mr. Sarnelli also requests that the Court recommend that the BOP consider him for the Residential Drug Abuse Program ("RDAP").  To meet the admission criteria for RDAP, an inmate must have a verifiable substance abuse disorder, sign an agreement acknowledging the program responsibility, and be able to complete all three phases of the program (a unit-based component, follow-up services, and community treatment services).  28 CFR § 550.53(b).  The ultimate decision on a candidate's acceptance to the program resides with the BOP drug abuse program coordinator.  We are asking the Court to provide a recommendation for RDAP

Hon. Naomi Buchwald
May 22, 2023
Page 10

because Mr. Sarnelli wants to continue to learn the tools and skills necessary to navigate a lawful and sober life.  (Exhibit B.)

## IV.     Conclusion

For the foregoing reasons, we respectfully submit that Mr. Sarnelli be sentenced to 120 months' imprisonment at FCI Danbury, Connecticut, Satellite Camp, a sentence that is sufficient but not greater than necessary to comply with the objectives of section 3553(a).

Respectfully submitted,

/s/ Christopher Gunther
Christopher J. Gunther
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001
christopher.gunther@skadden.com

cc:     All counsel of record (by ECF)